IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

JOHN M. HERRMANN AND PAMELA SHELTON
HERRMANN,

                                    *Plaintiffs*,

      v.                                                    Civil Action No. 7:19-cv-927

WELLS FARGO BANK, N.A.,

                                    *Defendant*.

### Plaintiffs' Memorandum in Opposition to
### Defendant Wells Fargo Bank, N.A.'s Motion for Judgment on the Pleadings

This case arises under the Real Estate Settlement Procedures Act, or "RESPA," 12 U.S.C. §§ 2601-2617. When Defendant Wells Fargo Bank, N.A., merged with Wachovia, it inherited the Plaintiffs' home equity loan. Then it misapplied their loan payments. When the Plaintiffs tried to refinance, it made them pay more than the amount due. And when they questioned its behavior, Wells Fargo did not reasonably investigate or refund their money—violating both its statutory duties under RESPA and its basic common-law duty not to take someone else's property. So Plaintiffs Pamela and John Herrmann sued, asserting RESPA and conversion claims.

Wells Fargo now asks the Court to enter judgment on the pleadings. Its motion should be denied. Wells Fargo's arguments ignore the facts alleged in the Amended Complaint, assert other inaccurate "facts" outside the pleadings (some of which are even contradicted by the exhibits to its own brief), and generally misinterpret the law. Contrary to Wells Fargo's arguments,

1

1. RESPA applies to home equity lines of credit like the Herrmanns' loan. *See* 12 U.S.C. §2602(1).

2. As alleged in the Amended Complaint, the Herrmanns submitted qualified written requests and notices of error under RESPA. *See, e.g.*, 12 U.S.C. § 2605; 12 C.F.R. § 1024.35; *Catalan v. GMAC Mort. Corp.*, 629 F.3d 676, 688 (7th Cir. 2011).

3. But Wells Fargo did not conduct the reasonable investigation RESPA required, thus violating its statutory duties. *See* 12 U.S.C. § 2605(e)(2); 12 C.F.R. § 1024.35(e).

4. The Herrmanns suffered damages as a result. If Wells Fargo had reasonably investigated, it would have refunded their overpayment—sparing them the cost of hiring an accountant to correct the bank's calculations, and saving them the hassle and emotional distress of repeated RESPA inquiries. *See, e.g.*, *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016); *Marais v. Chase Home Fin. L.L.C.*, 736 F.3d 711, 721 (6th Cir. 2013).

5. The Herrmanns have stated a claim for conversion because Wells Fargo has a common law duty not to steal from its clients separate from any duty it assumes by contract. *See, e.g.*, *PGI, Inc. v. Rathe Prods., Inc.*, 576 S.E.2d 438, 443 (Va. 2003); *Redman v. Fed'l Nat'l Mortg. Assoc.*, No. 3:14-cv-6, 2015 WL 149833 *3-4 (W.D. Va. Jan. 12, 2013).

### BACKGROUND

In December 2006, the Herrmanns took out a home equity line of credit from Wachovia Bank. Am. Compl. ¶ 6, ECF No. 3. Four and a half years later, Wells Fargo merged with Wachovia and became the servicer for the Herrmanns' loan. *Id.* ¶¶ 8, 9. The Herrmanns grew frustrated with their inability to understand Wells Fargo's monthly statements and the bank's application of their payments. *Id.* ¶ 12. So they decided to refinance. *Id.* ¶ 13.

The Herrmanns asked Wells Fargo for a repayment amount. *Id.* ¶ 14. Although the Herrmanns owed only about $84,000, Wells Fargo demanded payment of $85,159.97 to release its lien on their home. *Id.* ¶ 16, 17. To obtain clear title, the Herrmanns had to pay the amount Wells Fargo demanded. *Id.* ¶ 18. But they questioned it and repeatedly sent written communications to Wells Fargo. *See id.* ¶¶ 20, 21. These written communications constituted "qualified written requests" and "notices of error" under RESPA. *Id.* ¶ 21.

2

Wells Fargo responded but its answers were inconsistent and incomprehensible. *See id.* ¶¶ 23-109. The bank itself admitted that some of its responses were "incorrect" and "not accurate." *Id.* ¶ 79. It admitted that others were incomplete. *Id.* ¶ 63.

The Herrmanns ultimately had to hire an accountant to decipher the reams of inconsistent information that Wells Fargo had provided. *Id.* ¶ 110. The accountant concluded that the actual payoff amount for their loan was much less than Wells Fargo had demanded. *Id.* ¶ 110.

The Herrmanns sued Wells Fargo, asserting a RESPA claim as well as a common-law claim for conversion. Wells Fargo answered, then moved for judgment on the pleadings before the start of discovery. Relying on documents and purported facts outside the Amended Complaint, Wells Fargo asserts that

1.  RESPA does not apply to home equity lines of credit;

2.  The Herrmanns did not submit proper qualified written requests because they used the wrong address;

3.  Wells Fargo met its duties under RESPA because it responded to the Herrmanns 13 times;

4.  The Herrmanns did not suffer actual damages because any harm they suffered resulted from Wells Fargo's initial misallocation of payments, not its RESPA responses; and

5.  The economic-loss rule bars the Herrmanns' conversion claims, and those claims are not adequately pleaded.

## STANDARD OF REVIEW

The Court will review a motion for judgment on the pleadings under the same standard as a motion to dismiss under Rule 12(b)(6). *Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013). Both motions test the sufficiency of the complaint. And Rule 8(a) just requires a short and plain statement of the claim showing that the pleader is entitled to relief. Thus, the Herrmanns must allege facts sufficient to assert a plausible right to relief—that is, one that is more than just

3

speculative. *Id.* at 116. The rules do not require heightened fact pleading of specifics. *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1247 (11th Cir. 2016). Nor are the Herrmanns required to allege all the elements of a prima facie case. *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).

When reviewing Wells Fargo's motion, the Court should accept the Amended Complaint's allegations as true, *id.*, viewing them in the light most favorable to the Plaintiffs, *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000); *accord O'Ryan v. Dehler Mfg. Co.*, 99 F. Supp. 2d 714, 718 (E.D. Va. 2000). The Court may consider the Amended Complaint, its exhibits, and any authentic documents integral to the pleading. *Columbia*, 738 F.3d at 116. It should not accept statements in documents outside the complaint as true unless the Plaintiffs have adopted those statements or asserted their truthfulness. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166-69 (4th Cir. 2016). The Court is not, for example, bound by the Defendants' self-serving claims in their own documents. *See id.* Beyond that, the Court may not consider other evidence without converting the motion into a motion for summary judgment and giving the parties a fair chance to present all material information. Fed. R. Civ. P. 12(d).

## Law and Discussion

1.   **Wells Fargo does not accept the alleged facts as true, in violation of the Rule 12(c) standard.**

Though Wells Fargo has moved for judgment on the pleadings, it argues a motion for summary judgment. Much of its position boils down to an insistence that the Herrmanns lack evidence to support their allegations.[1] For example, Wells Fargo complains that "without support,

---

[1] *E.g.*, Br. 2 (complaining that "[w]ithout support," the Herrmanns state that their payoff amount was less than $84,000); Br. 3 (faulting Herrmanns for not showing the derivation of this figure); Br. 3 (protesting that Herrmanns

4

Plaintiffs conclude, their 'accountant determined that the actual payoff amount was far less than Wells Fargo demanded.'" Def. Wells Fargo Bank, N.A.'s Mem. in Supp. of Mot. for J. on the Pleadings 12, ECF No. 10 [hereinafter Br.]. But this is a perfectly appropriate factual allegation. There is nothing implausible about it. The Herrmanns don't need to attach an expert report to support it at the pleadings stage. Other sections of Wells Fargo's brief go so far as to affirmatively deny the Herrmanns' factual allegations.[2] None of these arguments can support a Rule 12(c) motion, which requires the Court to accept the facts pleaded as true.

**2.      The Herrmanns have properly stated a claim under RESPA.**

Turning to the substance of Wells Fargo's motion, RESPA is a consumer-protection statute that imposes duties on mortgage loan servicers. 12 U.S.C. §§ 2601, 2605. Congress passed it to insure that lenders gave borrowers better and more timely information about loan servicing and settlement, and to protect borrowers from abusive lending practices. 12 U.S.C. § 2601; *Marais*, 736 F.3d at 719. As a remedial statute, RESPA must be liberally construed to effect Congress's purpose. *Renfroe*, 822 F.3d at 1244; *accord Medrano v. Flagstar Bank*, FSB, 704 F.3d 661, 665-666 (9th Cir. 2012).

RESPA requires a loan servicer to respond to certain borrower inquiries, called "qualified written requests" and "notices of error," by either (1) correcting the error or (2) conducting a reasonable investigation and explaining to the borrower why no error occurred. 12 U.S.C. § 2605(e)(2); 12 C.F.R. § 1024.35(e). If a servicer breaches these duties, the borrower is entitled to any actual damages that result. 12 U.S.C. § 2605(f)(1)(A). And if the servicer engages in a pattern

---

do not explain why they began questioning Wells Fargo's faulty math); Br. 3 (objecting that Herrmanns do not specify how or when they sent each QWR to Wells Fargo).

[2] *E.g.*, Br. 5 (denying that Wells Fargo caused the damages the Herrmanns suffered); Br. 9 (denying that Wells Fargo's calculations were wrong); Br. 12 (falsely asserting that the Herrmann's accountant made an "unsupported and undocumented" determination that Wells Fargo's math was wrong).

or practice of those violations, the borrower may have a right to statutory damages. 12 U.S.C. §

2605(f)(1)(A).

**A.      RESPA applies to home equity lines of credit like the Herrmann's loan.**

Contrary to Wells Fargo's argument, RESPA applies here. Congress determined that RESPA

would govern servicers of "federally related mortgage loans." 12 U.S.C. § 2605(e). It defined that

term broadly to include any loan (other than temporary financing, like a construction loan) that

> (A) is secured by a first or subordinate lien on residential real property (including individual
> units of condominiums and cooperatives) designed principally for the occupancy of from one
> to four families, including any such secured loan, the proceeds of which are used to prepay or
> pay off an existing loan secured by the same property; and
>
> (B)
>
>     (i) is made in whole or in part by any lender the deposits or accounts of which are
> insured by any agency of the Federal Government, or is made in whole or in part by any
> lender which is regulated by any agency of the Federal Government, or
>
>     (ii) is made in whole or in part, or insured, guaranteed, supplemented, or assisted in
> any way, by the Secretary or any other officer or agency of the Federal Government or under
> or in connection with a housing or urban development program administered by the Secretary
> or a housing or related program administered by any other such officer or agency; or
>
>     (iii) is intended to be sold by the originating lender to the Federal National Mortgage
> Association, the Government National Mortgage Association, the Federal Home Loan
> Mortgage Corporation, or a financial institution from which it is to be purchased by the
> Federal Home Loan Mortgage Corporation; or
>
>     (iv) is made in whole or in part by any "creditor", as defined in section 1602(f) [1] of
> title 15, who makes or invests in residential real estate loans aggregating more than $1,000,000
> per year, except that for the purpose of this chapter, the term "creditor" does not include any
> agency or instrumentality of any State;

12 U.S.C. §2602(1).

This definition—which must be liberally construed—includes the Herrmanns' loan. That loan

was secured by a lien on residential real property, their home, and it did not fall within any of the

statutory exceptions created by Congress. Through the life of their loan and the course of this

litigation, Wells Fargo has acted as though RESPA applies. It responded to their RESPA inquiries.

6

And it did not move to dismiss, challenge the Court's jurisdiction, or assert an affirmative defense that RESPA did not apply.

Yet for the first time in its Rule 12(c) motion, Wells Fargo now insists that RESPA does not cover home equity lines of credit at all. In support, it cites not the statutory text—which plainly applies—but part of the implementing regulation, Regulation X, that purports to exclude home equity lines of credit by narrowing the definition of "mortgage loan." Br. 5-6 (citing 12 C.F.R. § 1024.31). That section of Regulation X says: "*Mortgage loan* means any federally related mortgage loan, as that term is defined in § 1024.2 subject to the exemptions in § 1024.5(b) but does not include open-end lines of credit (home equity plans)." 12 C.F.R. § 1024.31.

Courts have rejected this administrative attempt to narrow Congress's definition of mortgage loans in RESPA. *Hawkins-El v. First Am. Funding, LLC*, 891 F. Supp. 2d 402, 407-08 (E.D.N.Y 2012) (HELOC is subject to RESPA qualified written request requirement despite contrary Regulation X exemption) *aff'd*, 529 Fed. Appx. 45 (2d Cir. 2013); *Cortez v. Keystone Bank, Inc.*, 2000 WL 536666, *10-11 (E.D. Pa. May 2, 2000) (same); *see also MorEquity, Inc. v. Naaem*, 118 F. Supp. 2d 885, 901 n.7 (N.D. Ill. 2000) (recognizing tension between statute and regulation but declining to address it). Even against Wells Fargo, some courts have applied RESPA to a home equity line of credit and analyzed compliance despite Wells Fargo's claimed exemption. *See Cole v. Wells Fargo Bank, N.A.*, 790 Fed. App'x. 460, 464-65 (3d Cir. 2019) (applying RESPA's requirements to HELOC); *Cole v. Wells Fargo Bank, N.A.*, No. 12-1932, 2016 WL 1242765, *9 (D.N.J. March 30, 2016) (noting but not accepting Wells Fargo's exemption argument).

Thus, in *Cortez*, Keystone Bank argued that Regulation X exempted home equity lines of credit from RESPA—the same argument Wells Fargo advances here. 2000 WL 536666 at *11. The

*Cortez* court held that Regulation X's narrow definition "directly conflict[ed] with the language in RESPA which expressly extend[ed] a lender's duties to borrower inquiries regarding the 'servicing' of any 'federally related mortgage loan.'" *Id.* It explained that when a regulation conflicted with the statute it was issued under, the regulation was invalid. *Id.* So RESPA's unambiguous statutory definition controlled, and RESPA governed home equity lines of credit. *Id.*[3]

For the reasons stated in *Cortez* and *Hawkins-El*, this Court should hold that RESPA applies. Wells Fargo is subject to Congress's mandate that it respond to RESPA requests about "federally related mortgage loans" as defined 12 U.S.C. § 2602(1). As a result, its leadoff argument fails.

**B.     The Herrmanns submitted proper qualified written requests and notices of error.**

Wells Fargo's second argument fares no better, because the Herrmanns properly submitted qualified written requests and notices of error. Am. Compl. ¶¶ 20, 21.

A servicer's obligation to supply information under RESPA is triggered by its receipt of a qualified written request, a notice of error, or a request for information. 12 U.S.C. § 2605(e)(1)(A); 12 C.F.R. §§ 1024.31, 1024.35, 1024.36. That requires the servicer to conduct a reasonable investigation, correct any errors found, and report back to the borrower. *See generally* 12 U.S.C. § 2605; 12 C.F.R. §§ 1024.35, 1024.36.

A "qualified written request" is simply written correspondence (other than notice on a payment coupon) that (1) lets the servicer identify the borrower's name and account and (2) "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that

---

[3] Though Wells Fargo has not argued the point and the case law does not address it, RESPA does authorize the CFPB to "prescribe such rules and regulations, to make such interpretations, and to grant such reasonable exemptions for classes of transactions, as may be necessary to achieve the purposes of this chapter." 26 U.S.C. § 2617. This language cannot save 12 C.F.R. § 1024.31. A regulation that rewrites a fundamental definition in its own enabling statute to exclude a huge class of transactions is not "reasonable" or "necessary to achieve the purposes" of that statute—especially in the context of remedial consumer-protection laws.

the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). "RESPA does not require any magic language before a servicer must construe a written communication from a borrower as a qualified written request and respond accordingly." *Catalan v. GMAC Mort. Corp.*, 629 F.3d 676, 687 (7th Cir. 2011).

A notice of error is a similarly broad category. It encompasses "any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. 1024.35(a).  "A qualified written request is just one form that a written notice of error or information request may take." Official Interpretations of Reg. X § 1024.31, *available at* https://www.consumerfinance.gov/policy-compliance/rulemaking/regulations/1024/Interp-31/ (last visited May 8, 2020). So Regulation X's error-resolution requirements can apply even if the servicer never receives a qualified written request.[4] *Id.* And in some cases, a borrower can submit a notice of error to a servicer through its website. Official Interpretations of Reg. X § 1024.35(c), *available at* https://www.consumerfinance.gov/policy-compliance/rulemaking/regulations/1024/Interp-35/#35-c-Interp (last visited May 8, 2020).

The Herrmanns alleged that they sent multiple qualified written requests and notices of error, and that Wells Fargo did not respond as RESPA required. Am. Compl. ¶¶ 21, 22-109.

---

[4] This interpretation comports with the statute's structure. The statutory cause of action established in 12 USC § 2605(f) applies to the whole section. Section 2605(e) governs qualified written requests, while § 2605(k)(1)(C) imposes a separate duty to respond "to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." This justifies the Official Interpretation's conclusion that a servicer must respond to a notice of error even when it is not a qualified written request. Here, the Herrmanns submitted both qualified written requests and notices of error. Wells Fargo attacks the former but not the latter.

Wells Fargo disputes these allegations. It complains that the Herrmanns did not send their correspondence to the correct address, so that correspondence did not count as a qualified written request. Br. 6-8. Wells Fargo argues that RESPA lets a servicer establish an exclusive address that a borrower must use to request information. Br. 6 (citing 12 C.F.R. § 1024.36(b)). Relying on an account statement from April 24, 2017–a document not attached to the Amended Complaint– Wells Fargo claims that it established such an address: P.O. Box 10335 in Des Moines, Iowa. Br. 7. Straying even more from the pleadings, Wells Fargo incorrectly states that the Herrmanns never used this address for their correspondence. Br. 7. Instead, relying on still more documents outside the Amended Complaint, it inaccurately asserts that all their communications came through either an email to the Board of Directors or complaints sent to the CFPB. Br. 7-8.

Wells Fargo's "we never received a RESPA request" argument fails for at least five reasons.

*First*, the Herrmanns submitted notices of error under RESPA. Am. Compl. ¶ 21. Wells Fargo doesn't even try to argue otherwise. The regulation it cites governs requests for information, not notices of error, and it argues that it "provided Plaintiffs with the written notice of the sole means for *requesting information* about their account." Br. 6-8 (emphasis added). To be sure, Regulation X imposes a coordinate rule for notices of error, 12 C.F.R. § 1024.35(c), and Defendant's Exhibit 1 supplies the same address for both. Yet Wells Fargo neither invokes this regulation nor asserts that the Herrmanns failed to comply with it when submitting their notices of error. In fact, the phrase "notice of error" never appears in its brief at all. RESPA establishes duties to respond to qualified written requests in 12 U.S.C. § 2605(e), and it also imposes a separate duty to respond "to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties" in 12 U.S.C. §

2605(f). Violation of either duty gives rise to a private cause of action under 12 U.S.C. § 2605(f). So even if Wells Fargo were correct that the Herrmanns did not send qualified written requests or requests for information to the right address, its argument would not justify dismissal because the Herrmanns' notices of error still triggered its RESPA duties.

*Second*, Wells Fargo never established an exclusive RESPA address. To do so under 12 C.F.R. § 1024.35(c) (or under 12 C.F.R. § 1024.36(b), for that matter), Wells Fargo had to give borrowers clear and conspicuous notice that "shall include a statement that the borrower must use the established address." 12 C.F.R. §§ 1024.35(c), 1024.36(c); Official Interpretations of Reg. X § 1024.35(c), *available at* https://www.consumerfinance.gov/policy-compliance/rulemaking/regulations/1024/Interp-35/#35-b-Interp-1-ii (last visited May 8, 2020).

But even after going outside pleadings, all Wells Fargo cannot show that it gave this notice. All it can muster is an account statement asking borrowers to use a P.O. box:

> **In Case of Errors or Questions About Your Credit Line Transactions**
>
> If you'd like to request information, notify us of an error, or share any concerns you may have about the servicing of your line, please contact us at P.O. Box 10335, Des Moines, IA 50306. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.
>
> In your letter, give us the following information:
> - Your name and account number
> - The dollar amount of the suspected error.
> - Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about.

Br. Ex. 1 at 4. This is not clear and conspicuous notice of an exclusive RESPA address. It does not use the required mandatory language that a "borrower must use the established address." It does not refer to RESPA, qualified written requests, requests for information, or notices of error at all. And there is nothing exclusive about it.

To appreciate these deficiencies, consider *Nash v. PNC Bank, N.A.*, No TDC-16-2910, 2017 U.S. Dist. LEXIS 60697 (D. Md. Apr. 20, 2017) (denying Rule 12(c) motion in part and granting it in part)—Wells Fargo's own authority for this argument. Br. 6-7. There, just like Wells Fargo, PNC argued that a borrower's RESPA claim should be dismissed on the pleadings because he had not sent his qualified written requests to the bank's exclusive RESPA address. *Id.* at *1, *7. Just like Wells Fargo, PNC had sent the borrower a written notice saying: "To request information or notify us of an error regarding your account, please send  a written request/notice to: PNC Mortgage, P.O. Box 8807, Dayton, OH 45401-8807." *Id.* *7.

The *Nash* court held that this notice did not establish an exclusive address. *Id.* It ruled that the lender's statement "did not explicitly identify this address as the designated address or borrowers to send QWRs within the meaning of RESPA. It in no way provided notice that a QWR must be sent to this address to qualify as a QWR," *id.*—all of which is also true here. The *Nash* court contrasted this with an effective effort to establish an exclusive RESPA address in another case:

> PURSUANT TO § 6 OF RESPA, A "QUALIFIED WRITTEN REQUEST" REGARDING THE SERVICING OF YOUR LOAN MUST BE SENT TO THIS ADDRESS: CITIMORTGAGE, INC. ATTN: CUSTOMER RESEARCH TEAM, PO BOX 9442, GAITHERSBURG, MD 20898-9442. A "qualified written request" is written correspondence, other than notice on a payment coupon or statement, which includes your name, account number and the reason(s) for the request.

*Id.*; *see also Nash v. Green Tree Servicing, LLC*, 943 F. Supp. 2d 640, 651 (E.D. Va. 2013) ("If you want to send a 'qualified written request' regarding the servicing of your loan to your new servicer, it must be sent to this address: Green Tree, PO Box 6176, Rapid City, SD 57709-6176."). This is worlds away from Wells Fargo's polite suggestion that a borrower might consider writing to a P.O. Box in Des Moines.

Yet there is an even bigger problem with Wells Fargo's argument: the 60-day time limit in its notice. RESPA imposes no such restriction. If Wells Fargo really wants to stipulate that its mandatory RESPA notice to all its borrowers across the country says "[w]e must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared," that's fine. But it would be admitting that it falsely informed every single one of its borrowers about their rights. In truth, the 60-day notice is just the billing error resolution process from the Truth in Lending Act, 15 U.S.C. § 1666(a)—an optional process a borrower can choose to use, if they want, to contest charges on their bill. It has nothing to do with RESPA.

*Third*, even if Wells Fargo had established an exclusive RESPA address, the Herrmanns sent a qualified written request and a notice of error to that address. So Wells Fargo's whole argument is based on a false premise. Attached as Exhibit 1 is the Declaration of Pamela S. Herrmann. The Declaration attaches a letter that the Herrmanns sent to P.O. Box 10335, Des Moines, Iowa 50306—the supposedly exclusive address. As discussed below, Plaintiffs offer this evidence without agreeing that Defendant's Rule 12(c) motion should be treated as a Motion for Summary Judgment (though the Declaration would be enough to defeat summary judgment on this point). They simply ask that the facts alleged in their Complaint be assumed to be true. That alone is enough to reject this whole line of argument. They submit this Exhibit to show that the alternative facts Wells Fargo posits are not accurate and offer no basis for judgment on the pleadings.

*Fourth*, it doesn't matter where the Herrmanns *sent* their correspondence because Wells Fargo *received* it. The statutory trigger under RESPA is receipt of a qualified written request or notice of error. 12 U.S.C. § 2605(e)(1)(A); 12 C.F.R. §§ 1024.31, 1024.35. The lengthy correspondence between the Herrmanns and Wells Fargo leaves no doubt that the bank received

13

their notices and the documents that they sent to the CFPB. Courts have held that this is enough to activate RESPA duties. In *Catalan v. GMAC Mort. Corp.*, 629 F.3d 676, 688 (7th Cir. 2011), for example, the borrower sent a letter to HUD, which in turn sent it on to the loan servicer. The Seventh Circuit held that this was enough to trigger RESPA. *Id.* This tracks other courts that have concluded that the key question is whether the servicer received the borrower's request, not whether the borrower used the servicer's preferred address. *See, e.g.*, *McMillen v. Resurgent Capital Servs., L.P.*, No. 2:13-cv–738, 2015 WL 5308236, *6-7 (S.D. Ohio Sept. 11, 2015) (endorsing this rule and collecting cases); *Allen v. Bank of Am.*, 933 F. Supp. 2d 716, 733 (D. Md. 2013) (holding that the defendant bank "did have an obligation under RESPA to respond to the Allens' letter because it received the letter and the letter contained all the necessary details.").

*Fifth*, Wells Fargo's argument should be rejected because it tries to win summary judgment on disputed questions of fact before discovery has even begun. Wells Fargo relies on documents and purported "facts" outside the Amended Complaint. Some of those "facts" are inaccurate. For example, Wells Fargo tells the Court that all the Herrmanns' communications comprised either emails to the Board of Directors or CFPB complaints. Yet the documents attached to Wells Fargo's own brief show that this is not true. Exhibit 2 shows that Ms. Herrmann contacted Wells Fargo's website, repeatedly spoke with Wells Fargo's representatives over the phone, and met in person with a senior official at her local branch. Exhibit 4 also refers to phone calls and correspondence. It shows that Wells Fargo gave the Herrmanns phone and fax numbers to use, further undermining its claim of an exclusive RESPA address. Wells Fargo asks the Court to consider Exhibits 2 and 4 as part of the pleadings while telling the Court that none of the

communications they describe took place. The standard of review bars that sort of cherry picking in a Rule 12(c) motion.

The Court should not convert Wells Fargo's motion into a motion for summary judgment because the parties have not yet started discovery, or even held their Rule 26(f) conference. Discovery will show that the representations underlying Wells Fargo's Rule 12(c) motion are wrong. For example, the Declaration of Pamela S. Herrmann shows that, contrary to Wells Fargo's representations, the Herrmanns sent correspondence to the P.O. Box listed in their account statement. Discovery will show that Ms. Herrmann did, in fact, speak with a senior Wells Fargo official at her local branch, as memorialized in Wells Fargo's own documents, and that the senior official told her to email the Board of Directors rather than using the "exclusive" address in their account statement. The Herrmanns also reached out to the CFPB and the Virginia Attorney General. Based on Wells Fargo's haphazard responses to the repeated notices of error, the Herrmanns expect that discovery will show that Wells Fargo conducted nothing like a reasonable investigation into their concerns—thus breaching the core RESPA duty are issue here, as discussed below. It would be improper to grant judgment as a matter of law on these disputed factual points before the parties have even started discovery.

## C.    Wells Fargo did not conduct a reasonable investigation.

RESPA requires servicers to respond reasonably to qualified written requests and notices of error. Essentially, a servicer must conduct a reasonable investigation and fix the error, perhaps by crediting the owner's account, or show that no error occurred and explain that conclusion in writing to the borrower. 12 U.S.C. § 2605(e)(2); 12 C.F.R. §1024.35(e)(1)(i); *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1244 (11th Cir. 2016). The key is that the servicer's investigation

must be reasonable. 12 C.F.R. 1024.35(e)(1)(i); *Renfroe*, 822 F.3d at 1244. Given the ordinary meaning of "investigation" and RESPA's remedial purposes, the statute "imposes a substantive obligation on mortgage loan servicers to conduct a reasonably thorough investigation before responding to a borrower's qualified written request." *Wirtz v. Specialized Loan Servicing, LLC*, 886 F.3d 713, 717 (8th Cir. 2018). A servicer cannot meet that obligation just by walking through the motions and mailing a letter. *Vilkovsky v. Specialized Loan Servicing, LLC*, No. 2:16-cv-1291, 2017 WL 839493, *6 (W.D. Pa. March 3, 2017) (denying motion to dismiss because the court could not tell from servicer's statement if it had conducted a reasonable investigation).

Thus, a plaintiff can recover damages under RESPA by showing that the defendant did not reasonably investigate a notice of error. *Saccameno v. Ocwen Loan Servicing, L.L.C.*, 372 F. Supp. 3d 609, 640 (N.D. Ill. 2019) ("A jury could reasonably have concluded that Ocwen's failure to recognize its error—especially after being given a second opportunity—was due to its failure adequately to investigate the matter."), *rev'd on other grounds*, 943 F.3d 1071 (7th Cir. 2019). This specific requirement of a reasonable investigation was part of the of the 2014 amendments to Regulation X. So older cases that do not apply a reasonableness standard to the investigation are no longer good law. *See Wilson v. Bank of Am.*, 48 F. Supp. 3d 787, 803-44 (E.D. Pa. 2014). That includes *Vassalotti v. Wells Fargo Bank, N.A.*, 732 F. Supp. 2d 503 (E.D. Pa. 2010), which the Defendant relies on here. Br. 8-9. "The addition of the word 'reasonable' seemingly imposes a substantive obligation that is not satisfied by the mere procedural completion of some investigation followed by a written statement of reasons." *Wilson*, 48 F. Supp. 3d at 804. And in all events, under Fourth Circuit precedent a statutory duty to investigate implies a duty to conduct a reasonable investigation. *See Johnson v. MBNA*, 357 F.3d 426, 430-31 (4th Cir. 2004) ("It would

make little sense to conclude that, in creating a system intended to give consumers a means to dispute—and, ultimately, correct—inaccurate information on their credit reports, Congress used the term 'investigation' to include superficial, unreasonable inquiries by creditors.").

Here, the Herrmanns allege that in response to their qualified written requests and notices of error, Wells Fargo provided a bewildering series of inconsistent and inaccurate explanations. Am. Compl. ¶¶ 22-109. Sometimes Wells Fargo itself admitted that its earlier explanations were "not accurate" and "incorrect." Am. Compl. ¶ 79. The Herrmanns' accountant reviewed the calculations and concluded that Wells Fargo had charged an incorrect payoff amount. Am. Compl. ¶ 110. The Herrmanns allege that Wells Fargo did not properly investigate their account or correct its obvious errors. Am. Compl. ¶¶ 22, 107-09. Even if they hadn't expressly alleged these facts, they are the reasonable inferences to be drawn at the pleading stage, viewing the facts in the light most favorable to the Plaintiffs. Their allegations track those of the plaintiff in *Wilson*, who sufficiently alleged that servicer did not reasonably investigate her notices of error when it sent her responses with contradictory explanations. *See Wilson*, 48 F. Supp. 3d at 787.

Yet Wells Fargo asks this Court to rule as a matter of law that it met its RESPA duties. It points to the volume of correspondence it generated (but not its content), attaching a few self-serving letters that supposedly show why it believed that its accounting was correct. Br. 8-9. But the question under RESPA is not whether Wells Fargo subjectively believed that Wells Fargo did a bang-up job. *See Holland v. GMAC*, No. 03-2666-CM, 2006 WL 1133224, *9 (D. Kan. April 26, 2006). The question is whether Wells Fargo conducted an objectively reasonable investigation to support that belief. 12 U.S.C. § 2605(e)(2); 12 C.F.R. §1024.35(e)(1)(i).

It did not. Wells Fargo is a bank. Its primary duty to its customers is to account for their money. The Herrmanns repeatedly complained about the way it applied their payments and calculated their payoff amount. Wells Fargo could not supply a consistent explanation, let alone an accurate one. It is proper to conclude, at the pleading stage, that a reasonably thorough investigation would have gotten the math right. At the very least, Wells Fargo would have been able to consistently explain the calculations it performed. That it could not supports a RESPA claim for failing to conduct a reasonable investigation.

**D.     The Herrmanns have adequately pleaded damages.**

When a servicer fails to follow RESPA, it is liable to the borrower for all actual damages that result. 12 U.S.C. § 2605(f)(1)(A). If the borrower shows a pattern or practice of noncompliance, the servicer is also liable for statutory damages of up to $2,000.

Actual damages under RESPA include the failure to refund a borrower's overpayment. *Renfroe*, 822 F.3d at 1246. They also include costs associated with preparing qualified written requests or notices of error that the servicer improperly ignores. *See Marais v. Chase Home Fin. L.L.C.*, 736 F.3d 711, 721 (6th Cir. 2013) (per curiam) (reversing dismissal of RESPA claim and remanding with instructions to consider plaintiff's argument that "her QWR expenses became actual damages when [the defendant] ignored its statutory duties to adequately respond."); *McMillen*, 2015 WL 5308236 at *109 ("Therefore, where the borrower incurs costs as the result of submitting a QWR but effectively receives no benefit, due to a servicer's non-trivial violation of 12 U.S.C. § 2605(e)(2), those costs may become 'actual damages.'"). And RESPA lets borrowers recover damages for emotional distress. *Carter v. Countrywide Home Loans*, No. 3:07-cv-651, 2009 U.S. Dist. LEXIS 31446, *7 (E.D. Va. April 14, 2009) (Dohnal, M.J.); *but see Luther v Wells Fargo*

*Bank*, No. 4:11-cv-67, 2012 U.S. Dist. LEXIS 142538, *24 n.6 (W.D. Va. Aug. 6, 2012)

(questioning whether RESPA allows emotional distress damages but concluding that plaintiff had

not adequately pleaded them) (Ballou, M.J.)

A servicer's dealings with a single borrower can show a pattern and practice of

noncompliance. *Ploog v. Homeside Lending, Inc.*, 209 F. Supp. 2d 863, 867-68 (N.D. Ill. 2002).

Here, Wells Fargo miscalculated the Herrmanns' payoff amount, forcing them to overpay on

their home equity line of credit before it would release its lien on their house. Am. Compl. ¶¶ 1,

14-18. Wells Fargo then did not properly investigate the issues they raised. Am. Compl. ¶¶ 22,

106-108. As a result, the Herrmanns suffered actual damages under RESPA, including: (1) an

overpayment on their home equity line of credit, which Wells Fargo would have refunded if it had

reasonably investigated their account; (2) the expense of hiring an accountant to correct Wells

Fargo's miscalculations; (3) the time and expense of preparing and sending numerous qualified

written requests and notices of error, as well as holding repeated teleconferences and meetings

with Wells Fargo. *See* Am. Compl. ¶¶ 1, 14-18, 110, 115, Prayer for Relief (1). Because damages

need not be pleaded with specificity, the Amended Complaint does not allege all their damages,

which include lost time and inconvenience and emotional turmoil from not getting a straight

answer to their question. Since Wells Fargo responded inappropriately to notices of error more

than a dozen times, this one case shows a pattern and practice of noncompliance.

Wells Fargo complains that all these damages resulted from its initial misallocation of

payments, not its failure to meet its duties under RESPA. Br. 10. But if Wells Fargo had

reasonably investigated, it would have simply done the math and corrected the error. The

Herrmanns would have gotten their money back. They would not have had to hire an accountant.

They would not have had to repeatedly raise the same issues with Wells Fargo. And their correspondence would not have been met with repeated inconsistent statements.

The Herrmanns' claim mirrors *Renfroe v. Nationstar Mortgage, L.L.C.*, 822 F.3d 1241 (11th Cir. 2016), where the Eleventh Circuit reversed the district court's dismissal of a RESPA claim. Just like the Herrmanns, Renfroe wrote to her mortgage servicer, Nationstar, questioning its application of her loan payments. Nationstar responded with a letter saying that it had handled her loan properly, enclosing some loan documents. Renfroe sued, alleging that Nationstar had failed to (1) investigate her account properly, (2) respond to her notice of error, or (3) refund her account. *Id.* at 1243. Nationstar argued that it had followed RESPA and that Renfroe had not adequately pleaded damages. (This is essentially the same as the Herrmanns' claim against Wells Fargo. The difference is that rather than providing no explanation, Wells Fargo provided multiple inconsistent explanations, all of which were wrong.) The district court dismissed the case. *Id.*

On appeal, the Eleventh Circuit first found that Renfroe had plausibly alleged (1) that Nationstar had not offered a written explanation for its handling of her loan payments, (2) which suggested that Nationstar's investigation was unreasonable, thus (3) preventing it from discovering and correcting its account error. *Id.* at 1245. It then held that these allegations established a RESPA violation because accepting Nationstar's argument that it had conducted a reasonable investigation based on its own response letter and crediting its claims over the allegations in Renfroe's amended complaint would "turn[] the standard for considering a Federal Rule of Civil Procedure 12(b)(6) motion on its head." *Id.* (Wells Fargo asks the Court to perform the same headstand here.)

Regarding damages, the Eleventh Circuit held that Renfroe had adequately pleaded actual damages by asserting that Nationstar had failed to refund her overpayment. *Id.* at 1246. After all, if Nationstar had met its statutory duties, it would have given her a refund. *Id.* Like Wells Fargo, Nationstar insisted that this harm occurred before Renfroe submitted her notice of error. The court rejected that argument, pointing out that a notice of error triggers a present RESPA duty to correct a past error. *Id.* A borrower can send a notice of error only after an error occurs. If RESPA reached only future errors, as Nationstar and Wells Fargo insist, then Congress's directive in § 2605(e)(2)(A) that servicers "make appropriate corrections in the account of the borrower [when there is an error], *including the crediting of any late charges of penalties*" would be meaningless. *Id.* (emphasis in original). The Eleventh Circuit rejected this "cramped" reading of the statute, *id.*, and this Court should, too.

### 3.     The Herrmanns have stated a claim for conversion.

Along with the RESPA violations, the Herrmanns' Amended Complaint states a common-law claim for conversion. Conversion is "any wrongful exercise or assumption of authority over another's goods, depriving him of their possession; and any act of dominion wrongfully asserted over property in denial of the owner's right, or inconsistent with it." *PGI, Inc. v. Rathe Prods., Inc.,* 576 S.E.2d 438, 443 (Va. 2003) (cleaned up). Here, Wells Fargo took possession of the Herrmanns loan payments but did not properly apply them to their loan. *See* Am. Compl. ¶¶ 12, 20, 23-109. When the Herrmanns looked to refinance, Wells Fargo refused to release its lien on their home unless they paid thousands of dollars that it was not entitled to. Am. Compl. ¶¶ 1, 14-18. When the Herrmanns challenged Wells Fargo's calculation of the payoff amount, Wells Fargo refused to return their money. Am. Compl. ¶¶ 12, 20-109. That amounted to conversion. *See, e.g., Redman v.*

*Fed'l Nat'l Mortg. Assoc.*, No. 3:14-cv-6, 2015 WL 149833 *3-4 (W.D. Va. Jan. 12, 2013) (denying motion to dismiss conversion claim in a RESPA case).

   Wells Fargo wrongly insists that the economic-loss rule bars any action for conversion, arguing that the Herrmanns are pursuing losses suffered as the result of a duty only by agreement. Br. 11-12. The same set of facts can lead to both a breach-of-contract action and a tort. *See, e.g., Tingler v. Graystone Homes, Inc.*, 834 S.E.2d 244, 254 (Va. 2019). Whether a given claim sounds in contract or tort depends on the source of the duty violated. *Id.* at 254-55. The economic-loss rule is just one application of this source-of-duty rule. *Id.* at 264. It does not apply here because the duty Wells Fargo violated did not arise by contract. Under settled law, "[a] cause of action for conversion lies independent of an action for contract, and may provide a separate basis, distinct from the contract, upon which one partner may sue another." *PGI*, 576 S.E.2d at 443.

   Thus, in *PGI*, Rathe and PGI started a joint venture to manage a traveling museum show for the Smithsonian. 576 S.E.2d at 440-41. When the joint venture could not collect accounts receivable from the Smithsonian, PGI authorized Rathe to negotiate and settle on the joint venture's behalf. Rathe wrote the Smithsonian saying that a compromised settlement figure would allow PGI and Rathe to receive a reduced final payment. *Id.* at 440. They reached a settlement, with Rathe executing the settlement agreement on behalf of PGI. Rathe received $ 250,000 from the Smithsonian but refused to pay any of the proceeds to PGI, contrary to their agreement. *Id.* The Virginia Supreme Court held that, on the evidence presented, the jury had a right to find that Rathe had converted PGI's property and reinstated the damages award of $100,000. 576 S.E.2d at 443. The contracts between PGI and Rathe did not bar PGI's conversion claim. The Court remanded the case for a determination of punitive damages.

Wells Fargo also complains that the Herrmanns have not alleged "a single fact in support or a . . . a single specific example of how the payoff amount was incorrect." Br. 12. On Wells Fargo's account, these "hollow accusations" cannot support a plausible claim for relief. *Id.* But a party does not have to attach an expert report to a complaint to survive a Rule 12 challenge. The Herrmanns alleged that they hired an accountant who checked Wells Fargo's math and found that it was wrong. Those are allegations of fact. They are not conclusions of law. They are not subject to a heightened pleading standard, like a claim for defamation or fraud. They are adequate to state a claim under Rule 8.

In fact, this Court has already rejected Wells Fargo's arguments in a conversion case about home mortgage payments. In *Redman v. Federal National Mortgage Association*, No. 3:14-cv-6, 2015 WL 149833 *3-4 (W.D. Va. Jan. 12, 2013), the Redmans sued Fannie Mae for breach of contract, Ocwen for RESPA violations, and both Fannie Mae and Ocwen for conversion. Just like the Herrmanns, the Redmans asserted that Fannie Mae and Ocwen had converted their property by taking possession of their loan payments and failing to properly apply or return them. *Id.* at *3. Just like Wells Fargo, Fannie Mae and Ocwen moved to dismiss the conversion claims, arguing that (1) they were barred by the economic-loss rule, and (2) the borrowers had failed to allege the elements of conversion. *See id.* at *3-4. This Court denied their motion, holding that it was "constrained to conclude that the Redmans' claim for conversion against Fannie Mae and Ocwen may be pled in conjunction with their breach of contract claim against Fannie Mae." *Id.* at *3. It explained that under Virginia law, the duty not to convert another's property exists without a contract and thus supplies the basis for an independent tort claim. *Id.* So the Redmans were not

limited to pursuing a contract claim. *Id.* The Court also held that the Redmans' allegations adequately pleaded a claim for conversion. *Id.* at *4.

The same reasoning applies here. The Herrmanns have stated a claim for conversion.

### CONCLUSION

Wells Fargo's Motion for Judgment on the Pleadings should be denied.

John M. Herrmann
Pamela Shelton Herrmann

/s/ James J. O'Keeffe IV
James J. O'Keeffe IV (VSB #48620)
JOHNSON, ROSEN & O'KEEFFE, LLC
131 Kirk Avenue SW
Roanoke, VA 24011
(540) 491-0634
okeeffe@johnsonrosen.com

Thomas D. Domonoske (VSB #35434)
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1A
Newport News, VA  23601
Telephone (540) 442-7706
tom@clalegal.com

*Counsel for Plaintiffs*